UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X   Case No.: 18-CV-4625
SUNITA SHAH,

**COMPLAINT**

                     Plaintiff,

      -against-

**JURY TRIAL DEMANDED**

DETECTIVE JOHN LISTON, individually,
POLICE OFFICER ANDREW MARTONE,
individually, OFFICERS "JANE DOE" 1-2
(fictitiously named) individually, OFFICERS
"JOHN DOE" 1-2 (fictitiously named)
and THE COUNTY OF NASSAU,
                     Defendants.
---------------------------------------------------------X

     Plaintiff, SUNITA SHAH, by his attorneys, HARFENIST KRAUT & PERLSTEIN, LLP, as and for a complaint, allege as follows:

## NATURE OF THE ACTION

1. This is an action seeking recovery for deprivation of Plaintiff Sunita Shah's civil rights guaranteed to her under the Fourth and Fourteenth Amendments to the United States Constitution committed by the above named municipal and civilian defendants.

2. The Plaintiff bases this action upon her illegal seizure by various members of the Nassau County Police Department on October 4, 2017 and the subsequent malicious prosecution by various members of the Nassau County Police Department which terminated with the dismissal of all charges under New York Criminal Procedure Law 170.30 on November 22, 2017.

## JURISDICTION

3. Jurisdiction is proper in this Court pursuant to 28 USC §1331 and 42 USC §1983 in that the actions taken by the municipal defendants violated the Plaintiff's civil rights.

## VENUE

4. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events occurred in Nassau County which is located in the Eastern District of New York.

## PARTIES

5. Plaintiff, Sunita Shah ("Sunita") is a resident of the State of New York, residing at 33 Crest Hollow Lane, Albertson, New York.

6. Detective John Liston ("Liston") who is being sued in his individual capacity, is a Detective in the Nassau County Police Department. Upon information and belief, at all relevant times described herein, Liston was acting under color of state law within the scope of his employment with the Nassau County Police Department.

7. Police Officer Andrew Martone ("Martone") who is being sued in his individual capacity, is an officer in the Nassau County Police Department. Upon information and belief, at all relevant times described herein, Martone was acting under color of state law within the scope of his employment with the Nassau County Police Department.

8. Nassau County Police Officers Jane Doe 1-2 and John Doe 1-2, are police officers who are being sued in their individual capacities and are employed by the County of Nassau. Upon information and belief, at all relevant times described herein, the police officers were acting under color of state law within the scope of their employment as police officers employed by the County of Nassau.

9. The County of Nassau ("Nassau") is a municipal subdivision of the State of New York, duly existing by reason of and pursuant to the laws of the State of New York.

**STATEMENT OF FACTS**

10. Sunita is an American citizen who emigrated to the United States from India more than thirty (30) years ago.

11. Since moving to the United States, Sunita has been gainfully employed and has raised a family along with her husband Rajesh Shah ("Rajesh").

12. In and around October 2017, Rajesh owned Accessories by Peak, a New York corporation which operated at 120 Hillside Avenue, Williston Park.

13. Accessories by Peak leased a storefront at 120 Hillside Avenue pursuant to a written lease executed by Rajesh and the landlord for the property.

14. In and around October 2017, Accessories by Peak rented the basement space at 120 Hillside Avenue to Surender Bhatty pursuant to a written agreement.

15. The basement space rented by Bhatty was accessible through a rear door located behind the property as well as a locked internal door located within 120 Hillside Avenue.

16. Sunita did not have any ownership interest in Accessories by Peak, nor was she an employee or officer of the corporation.

17. Sunita was not a signatory on the lease between Accessories by Peak and the landlord, nor the agreement by which Bhatty rented the basement space.

18. On October 4, 2017 at approximately 1PM, Rajesh received a call on his cellphone from a neighboring Hillside Avenue tenant who advised as to a smoky odor coming from the 120 Hillside Avenue space.

19. At the time, Rajesh and Sunita were visiting with friends away from the shop and discussing the upcoming marriage of their daughter.

20. During the call, Rajesh was advised by an unknown representative of the local Fire Department that they would break down the door to the location if he did not return within fifteen (15) minutes and unlock the door.

21. Rajesh and Sunita immediately drove to 120 Hillside Avenue and parked behind the storefront.

22. Sunita remained in the car while Rajesh entered the storefront.

23. Upon entering the storefront, Rajesh did not see smoke, but he did detect an odor coming from the basement space and he unlocked the basement door and walked downstairs to determine the source of the odor.

24. When he reached the basement, Rajesh observed various chemicals and trays and he went back up to his shop and asked the fire officials and at least one member of the Nassau County Police Department to view the materials.

25. Rajesh told the fire officials and the police officer that the items in the basement were not his and that Accessories by Peak rented the basement to Bhatty.

26. At this juncture, Sunita was still in the car which was parked behind the storefront.

27. The fire officials explained to Rajesh that the substances being produced in the basement were a form of synthetic marijuana called "K-2" and that the odor was a result of the chemicals being used in the manufacturing process.

28. Rajesh was then asked to go upstairs and sit down in his shop while the fire officials and police officers investigated.

29. In compliance with the request, Rajesh went upstairs and sat down in his shop and awaited the investigation.

30. A few minutes later, Sunita came in from their car and sat down next to Rajesh in his store.

31. Over the course of the next hour, numerous Nassau County Police officers entered the store and began questioning Rajesh about the basement.

32. Rajesh explained that Bhatty had rented the basement and Rajesh provided the officers with the original copy of the agreement for Bhatty's use of the basement.

33. At approximately 3:30 PM, Sunita asked if she could leave and Officer Jane Doe 1 told Sunita that she was not allowed to move.

34. Additionally, in and around this time, Rajesh and Sunita were told that they were not permitted to use their phones or even speak with each other.

35. Sunita began to feel that she was in distress and asked for water, but was denied.

36. Meanwhile, the police officers continued to question Rajesh about the basement and Bhatty while abjectly ignoring Sunita.

37. At approximately 6:30 PM, Sunita was told that she was being placed under arrest by Officer Jane Doe 2.

38. At the time that Sunita was arrested, there was no probable cause to believe that she had committed any criminal act.

39. Indeed, although Sunita had been present in the store for more than five (5) hours by the time that she was arrested, no police officer ever asked her any questions about her involvement with Accessories by Peak.

40. Similarly, although Sunita had been present in the store for more than five (5) hours by the time that she was arrested, no police officer ever asked Rajesh any questions about Sunita and whether she was involved with Accessories by Peak.

41. After being placed in handcuffs, Sunita was driven to the 3rd Precinct where she was processed and had her mugshot pictures taken.

42. Prior to October 4, 2017, Sunita had never been arrested for any reason.

43. After being detained for three hours at the 3rd Precinct, Sunita was then transported to the Nassau County Police Department Headquarters on Franklin Avenue where she was held overnight.

44. On the morning of Friday October 5, 2017, Sunita was brought to Nassau County District Court and arraigned on charges including Felony

Possession of a Controlled Substance under Penal Law §220.60 and Misdemeanor charges of: Reckless Endangerment under Penal Law §120.20; Illegal Use of Nitrous Oxide in violation of Public Health Law §3380.05 and Criminal Possession of a Controlled Substance under Penal Law §220.03.

45. The Felony Complaint and District Court Information were sworn to by Martone and Liston.

46. At the time that Martone and Liston swore out the Felony Complaint and District Court Information, they had no reasonable basis to believe that Sunita had ownership, custody or control over the substances being manufactured by Bhatty in the basement of 120 Hillside Avenue.

47. At the time that Martone and Liston swore out the Felony Complaint and District Court Information, they had no reasonable basis to believe that Sunita had ownership, custody or control of 120 Hillside Avenue.

48. At the time that Martone and Liston swore out the Felony Complaint and District Court Information, they had no reasonable basis to believe that Sunita had ownership, custody or control of Accessories by Peak.

49. In short, at no point was there any reason for any employee of the Nassau County Police Department to believe that Sunita had committed any crime.

50. Nonetheless, Sunita was required to retain counsel and make at least two additional Court appearances before the charges against her were dismissed under Criminal Procedure Law 170.30(1)(f).

51. Additionally, Sunita was the subject of multiple news articles, television and radio pieces and Internet posts, which reported that Sunita had been arrested for illegally manufacturing synthetic marijuana.

**AS AND FOR A FIRST CAUSE OF ACTION
FALSE ARREST IN VIOLATION OF PLAINTIFF'S
FOURTH AND FOURTEENTH AMENDMENT RIGHTS**

52. Plaintiff repeats, realleges and reiterates the allegations in paragraphs one through fifty one as if more fully set forth hereat.

53. On October 4, 2017, Sunita was intentionally detained by Police Officers Jane Doe 1-2 and John Doe 1-2

54. In detaining Sunita, the officers were acting under color of state law and within the scope of their employment by the Nassau County Police Department.

55. Sunita was aware of her detention.

56. Sunita did not consent to being detained.

57. Sunita's detention was not privileged as Police Officers John Doe 1-2 and Jane Doe 1-2 had no probable cause to believe that Sunita had had ownership, custody or control of Accessories by Peak.

58. Sunita's detention was not privileged as Police Officers John Doe 1-2 and Jane Doe 1-2 had no probable cause to believe that Sunita had had ownership, custody or control of 120 Hillside Avenue.

59. Sunita's detention was not privileged as Police Officers John Doe 1-2 and Jane Doe 1-2 had no probable cause to believe that Sunita had had ownership, custody or control of the substances in the basement of 120 Hillside Avenue.

60. As a result of her illegal detention, Sunita's Fourth and Fourteenth Amendment rights were violated.

61. As a proximate result of Defendants' intentional and malicious actions, Sunita was greatly humiliated, injured in her reputation, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish causing damage in an amount to be provided at trial but no less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

**AS AND FOR A SECOND CAUSE OF ACTION**
**MALICIOUS PROSECUTION IN VIOLATION OF PLAINTIFF'S**
**FOURTH AND FOURTEENTH AMENDMENT RIGHTS**

62. Plaintiff repeats, realleges and reiterates the allegations in paragraphs one through sixty-one as if more fully set forth hereat.

63. In swearing to the Felony Complaint, Liston participated in the commencement of a criminal prosecution against Sunita.

64. In swearing to the District Court Information, Martone participated in the commencement of a criminal prosecution against Sunita.

65. As a result of the commencement of the criminal prosecution, Sunita was required to hire a criminal defense attorney and make multiple court appearances before the charges were dismissed under New York Criminal Procedure Law 170.30 on November 22, 2017.

66. Liston lacked probable cause to believe that Sunita committed any criminal act at the time that he swore to the Felony Complaint.

67. Martone lacked probable cause to believe that Sunita committed any criminal act at the time that he swore to the Felony Complaint.

68. The lack of probable cause generally creates an inference of malice under Second Circuit case law.

69. As a result of the Defendants' malicious prosecution, Sunita's Fourth and Fourteenth Amendment rights were violated.

70. As a proximate result of Defendants' intentional and malicious actions, Sunita was greatly humiliated, injured in her reputation, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish causing damage in an amount to be provided at trial

but no less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

### AS AND FOR A THIRD CAUSE OF ACTION
### UNCONSTITUTIONAL "PERP WALK" IN VIOLATION OF
### PLAINTIFF'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS

71. Plaintiff repeats, realleges and reiterates the allegations in paragraphs one through seventy as if more fully set forth hereat.

72. Following Sunita's arrest, Sunita was transported to the Third Precinct and later was transported to the Nassau County Police Headquarters.

73. The following morning, all of the other arrestees in the control of the Nassau County Police Department were transported to Court for arraignment on the first morning transport.

74. Sunita and Rajesh were not transported on the first transport as Jane Doe 1-2 and John Doe 1-2 arranged to have Sunita paraded past the media prior to their departure from Nassau County Police Headquarters for Court.

75. Police Officers Jane Doe 1-2 and John Doe 1-2 and others acting on their behalf contacted the press in order to intentionally stage a media circus (a/k/a "Perp Walk") around Sunita's departure for Court.

76. The use of a public "Perp Walk" when sensational arrests are made is a common practice by members of the Nassau County Police Department.

77. Although public "Perp Walks" are common in Nassau County, there has been no effort by the County of Nassau's policymakers to prevent them.

78. Although public "Perp Walks" are common in Nassau County, there has been no attempt by the County of Nassau's policymakers to discourage officers from staging them.

79. The County of Nassau's policymakers have condoned the staging of "Perp Walks."

80. In staging Sunita's Perp Walk, Police Officers Jane Doe 1-2 and John Doe 1-2 violated Sunita's Fourth and Fourteenth Amendment rights.

81. In failing to prevent officers and assistant district attorneys from staging "Perp Walks" the County of Nassau has allowed an unconstitutional policy, practice and procedure to exist which caused the violation of Sunita's Fourth and Fourteenth Amendment rights.

82. As a proximate result of Defendants' intentional and malicious actions, Sunita was greatly humiliated, injured in his reputation and has suffered great mental anguish causing damage in an amount to be provided at trial but no less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

# **PRAYER FOR RELIEF**

**WHEREFORE,** plaintiffs respectfully demand the following relief:

a. For compensatory damages against all defendants in an amount to be proved at trial, but no less than THREE MILLION DOLLARS ($3,000,000.00).

b. For exemplary and punitive damages against all defendants in an amount to be proved at trial.

c. For attorneys fees pursuant to 42 U.S.C. §1988 against all defendants.

d. For such other and further relief as this Court may deem just and proper.

Dated: Lake Success, New York
      August 16, 2018

    Respectfully submitted,

    HARFENIST KRAUT & PERLSTEIN, LLP
    Attorneys for Plaintiff
    3000 Marcus Avenue, Suite 2E1
    Lake Success, New York 11042
    (516) 355-9600

  By: *Steven J. Harfenist*
      STEVEN J. HARFENIST
      NEIL TORCZYNER