UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
SUNITA SHAH,

                                                                                        18-CV-04625 (CBA)

        Plaintiff,

    -against-

DETECTIVE JOHN LISTON, individually,
POLICE OFFICER ANDREW MARTONE,
individually, POLICE OFFICER MICHAEL
KENNEY, individually, DETECTIVE
DAVID TWOMEY, individually, and
THE COUNTY OF NASSAU,

        Defendants.
---------------------------------------------------------------X

### DEFENDANTS' AMENDED PRE-TRIAL MEMORANDUM OF LAW

                                      **THOMAS A. ADAMS**
                                    **Nassau County Attorney**
                                    **Attorney for Defendants**
                                    **1 West Street**
                                    **Mineola, New York 11501**
                                    **(516) 571-3046**

**RALPH J. REISSMAN**
**Deputy County Attorney**
  *Of Counsel*

# TABLE OF CONTENTS

PAGE

Preliminary Statement ..... 1

Statement of Facts ..... 3

ARGUMENT

POINT I
SINCE PROBABLE CAUSE EXISTED TO ARREST PLAINTIFF,
HER CLAIM OF FALSE ARREST FAILS ..... 8

POINT II
SINCE PROBABLE CAUSE EXISTED TO ARREST PLAINTIFF,
AND SINCE DISMISSAL UNDER NEW YORK CPL § 170.30(1)(f)
IS NOT A TERMINATION IN FAVOR OF THE ACCUSED, HER
CLAIM OF MALICIOUS PROSECUTION FAILS ..... 11

POINT III
THE INDIVIDUAL DEFENDANTS ARE
ENTITLED TO QUALIFIED IMMUNITY ..... 15

POINT IV
EVIDENTIARY ISSUES ..... 17

**Preliminary Statement**

Defendants, County of Nassau, Nassau County Police Officer Andrew Martone ("Martone"), Nassau County Detective John Liston ("Liston"), Nassau County Police Officer Michael Kenney ("Kenney") and Nassau County Detective David Twomey ("Twomey") submit this Amended Pre-Trial Memorandum of Law in advance of the jury trial scheduled for June 13, 2022.

On October 4, 2017 plaintiff Sunita Shah was arrested by members of the Nassau County Police Department and charged with violation of New York Penal Law § 220.60, Criminal Possession of Precursors to Controlled Substances, an E Felony; with violation of New York Penal Law § 120.20, Reckless Endangerment in the Second Degree, an A Misdemeanor; and violation of New York Public Health Law § 3380.5(A), Illegal Use of Nitrous Oxide, an A Misdemeanor. The arrest arose out of a call from the Williston Park Fire Department in Nassau County, New York to the Nassau County Police Department requesting that officers respond to the location at 122 Hillside Avenue in Williston Park for a report of a noxious odor by Charles Water ("Water"), the owner of a karate studio at 122 Hillside Avenue.

Upon arriving, Martone and Kenney were met by firefighters and together they entered the karate studio and the business next door, and discovered that the noxious odor was coming from the adjacent store located at 120 Hillside Avenue called "Accessories by Peak." At the request of the officers who asked Water who were the keyholders for Accessories by Peak, Water telephoned Sunita and her husband, Rajesh Shah ("Rajesh"), who both arrived at the store shortly after by car. Rajesh went into the store first, and after a while Sunita joined him and the officers and firefighters in the store. Shortly afterward defendant Detective Liston, from the Narcotics Squad, arrived on scene. Upon investigating the officers found that the noxious odor was coming from the basement

of Accessories by Peak, wherein they found equipment and materials to manufacture for distribution Synthetic Cannabinoids, empty foil bags and plant materials in Rubbermaid tubs, which plants were coated by the chemical, Acetone (2-Propanone) and, in the next room, thousands of filled foil bags containing this Synthetic Cannabinoids ready for distribution. Based on their belief that illegal substances were being manufactured, Kenny or Martone called their superior officers to request the appearance of the Narcotics Vice Squad, and defendant Detective Twomey arrived.

Upon arrival Twomey asked Sunita and Rajesh, who were sitting inside Accessories by Peak, for information about the store. Sunita went into a desk and gave Twomey a typewritten piece of paper stating that an individual named Surrender Bhatty ("Bhatty") arranged to use the basement located downstairs, accessed through a door in the first floor, from Accessories by Peak. This document stated, "This is not a lease." The document stated that Bhatty was going to pay "To whom it may concern" that he was going to pay $700.00 per month for use of the basement.

Twomey believed there was sufficient probable cause to arrest both Sunita and Rajesh based on their apparent ownership of Accessories by Peak and the discovery of the drug manufacturing operation in the basement. Sunita was charged with the three charges indicated above and was transported in handcuffs to the Third Precinct. After being fingerprinted and photographed Sunita was brought to a detention cell and, later that evening, transported to Nassau County Police Headquarters in Mineola where she spent the night. The next morning, October 5, 2017 Sunita was brought to Nassau County District Court in Hempstead where she was arraigned and then released upon her own recognizance. On November 22, 2017 the Nassau County District Attorney's Office dismissed the charges against Sunita pursuant to New York Criminal Procedure Law § 170.30(1)(f) due to legal impediment, which is not a termination of charges in favor of the

accused. *Thompson v. Clark*, 364 F.Supp. 3d 178 (E.D.N.Y. 2018), *aff'd* 794 Fed. Appx. 140 (2d Cir. 2020).  Rajesh received a sentence of Adjournment in Contemplation of Dismissal ("ACOD").

### Statement of Facts

**Plaintiff Sunita Shah**.  Plaintiff Sunita Shah is a sixty-one year old female American citizen.  Sunita is married to Rajesh Shah.  In October 2017 Rajesh owned a business importing costume jewelry and hookahs from India.  The name of the business was "Accessories by Peak" located at 120 Hillside Avenue, Williston Park, New York.

**Defendant Andrew Martone**.  Defendant Andrew Martone is a Nassau County Police Officer, assigned to the Third Precinct in October 2017.  On October 4, 2017 while driving on patrol Martone received a radio call to respond to 122 Hillside Avenue in Williston Park because there was a high level of odor and fumes coming from that location.  When he arrived at 122 Hillside Avenue Martone spoke with Chief Robert Schnall of the Williston Park First Department, who told Martone there were high levels of fumes coming from the basement of 120 Hillside Avenue.  Martone was physically in the store located at 120 Hillside Avenue when he smelled the fumes, which smelled like Acetone, coming from the basement.  Sunita and Rajesh were inside the store when Martone arrived; Sunita was sitting at her desk.  Martone went down from the first floor into the basement less than half an hour after he arrived at the store.  The firefighters told Martone that in the basement were greenish leaves in Rubbermaid containers.

Martone made a telephone call to the Police Department requesting that a superior officer, and the Emergency Services Unit, come to the store.  Rajesh told Martone that he was not responsible for what was in the basement, and that he sublet the basement.  Rajesh told Martone that he owned Accessories by Peak. Martone arrested Sunita, and Police Officer Michael Kenney arrested Rajesh.  Martone recalled that the supervisors on the scene and the detectives made the

decision to arrest Sunita.  Sunita was transported to the Third Precinct stationhouse in Radio Motor Patrol Car Number 305, with Martone in the backseat of the vehicle. At the stationhouse Martone entered information into the Police Department's computer program called "Swift Justice" about the arrest, in Crime Report PDCN85ASJ.  At the stationhouse Martone placed Sunita into a detention cell.  Martone signed District Court Information 2017AR0051949 with the charges against Sunita.  In Arrest Report 2017AR0051949 Sunita was charged with violating New York Penal Law § 220.60, Criminal Possession of Precursor to Controlled Substances; PBH § 3380(5)(A), Inhalation of Toxic Vapors; and New York Penal Law § 120.20, Reckless Endangerment in the Second Degree.

**Defendant Michael Kenney**.  Defendant Michael Kenney is a Nassau County Police Officer.  On October 4, 2017 while riding in his patrol car Kenney received a radio dispatch that directed him to respond to the location at 122 Hillside Avenue in Williston Park, New York to investigate an odor of natural gas. Upon arriving at the location Kenney interviewed the complainant, Charles Water, the owner of a karate studio adjacent to 120 Hillside Avenue.  Mr. Water complained that he and other students in the studio smelled an odor of gas in the building. Kenney followed members of the Williston Park Fire Department into the building to try to find the source of the odor, which led them to the store located at 120 Hillside Avenue. Kenney walked through the store at 120 Hillside Avenue and saw what looked like a warehouse and smelled the same odor, and saw bongs, water pipes and bowls.  Kenney saw a door that led down to a basement with two rooms and entered the basement with members of the fire department.  Entering the basement in the first room he saw large plastic bins of a green leafy-like substance and large containers of another white substance, liquid, and in the second room he saw big bags of

prepackaged material as well as unfilled packaging materials. Kenney assumed that the unknown substance was some kind of chemical, and that it was unsafe.

Kenney went upstairs and called for a supervisor and emergency services because he was not sure what the chemical in the bin was, and there was a strong odor in the basement. He saw Sunita and Rajesh upstairs. Kenney asked Sunita and Rajesh if they were the business owners or key holders. Rajesh and Sunita said "it was their business," but he does not recall which person said that. Rajesh told Kenney that he agreed to have a friend, or a friend of a family use the space in the basement. Kenney told a Sergeant and Martone and detectives who had arrived, that Sunita and Rajesh were the key holders. Kenney formed a belief that Sunita and Rajesh owned the materials in the basement because of the fact that they were the keyholders, that what he saw in the basement resembled marijuana, and that the Shah's business was a warehouse that stored the smoking paraphernalia for that. At approximately 6:00 p.m. Sunita and Rajesh were arrested.

**Defendant John Liston**. In October 2017 Liston, as a Nassau County detective, was assigned to a two-man patrol car with Detective Tracy Cabey. On October 4, 2017 Liston drove to 120 Hillside Avenue in Williston Park, which was the Accessories by Peak store, because officers at that location called for a Detective Squad member to respond to the location since the officers received a call there for an odor, and when they went downstairs they found what they believed to be some kind of narcotics. The officers reported to Liston that in the basement they found what they believed to be Synthetic Cannabinoids and Acetone. When he arrived at the store at 120 Hillside Avenue, Liston saw Martone, Kenney, some members of the fire department, and Sunita and Rajesh in the store. Liston believed that Sunita and Rajesh were the owners of the store because when Liston came into the store, he asked them if they were the owners, and they responded, "Yes."

In the upstairs area of 120 Hillside Avenue Liston saw paraphernalia for smoking plant material, bongs and bowls. Liston went down into the basement and saw large bins filled with some type of plant, and bags filled with prepackaged Synthetic Cannabinoids. Either Martone or Kenney told Liston that Sunita and Rajesh were the owners or renters of the store. Before Sunita and Rajesh were arrested Liston saw a typewritten piece of paper stating that Surrender Bhatty was paying $700 per month to use the basement. The document stated, "This is not a lease."

Liston recalls that Detective Twomey made the decision to arrest Sunita. Liston signed District Court Information 217AR0014749 against Sunita for violation of 3380.5(A) for illegal use of nitrous oxide. However, Liston did not carefully review the "To wit" statement, which was based not on his knowledge, but the knowledge to Twomey as the Narcotics Detective. This mistake was due to the Police Department's record keeping system called "Swift Justice" in which multiple officer participating in an arrest fill in the paperwork for one another at various point along the paperwork process. Liston will testify that he made a mistake.

**Defendant David Twomey**. In October 2017 Twomey was assigned to the Narcotics Vice Squad operating out of Bethpage. On October 4, 2017 Detective Tracy Cabey called Twomey asking for assistance at 120 Hillside Avenue because the officers on scene thought there was manufacture of marijuana going on. It was actually K2.[1] Sunita was sitting in the front office with Rajesh. Twomey went into the next door and saw glass pipes, instruments for smoking marijuana, for smoking synthetic cannabis, and hookah pipes. Twomey next went downstairs and saw that it was not marijuana, but rather K2, the value of which he estimated to be $100,000.00. Twomey

---

[1] K2 is a kind of synthetic cannabinoid that is also known as *Spice*. According to the National Institute on Drug Abuse (NIDA), K2 and other synthetic cannabinoids are manmade chemicals that can alter a person's mental state. These chemicals are usually sprayed onto some kind of plant material, which gives them a more natural appearance and enables the consumption of the substance through smoking. K2 is also sold in liquid form, so it is can be vaporized and inhaled through that method. This is commonly done with vaporizers and e-cigarettes.
https://americanaddictioncenters.org/synthetic-cannabinoids/k2

came back upstairs and spoke to Sunita and Rajesh, who told him they operated an internet business selling glass pipes, and also the storefront at 120 Hillside Avenue. Twomey believed that Sunita and Rajesh were the owners, because the owners were called to come to the store, the Shahs showed up. Sunita provided to Twomey a receipt or made-up "lease" for the basement downstairs. She went right to the desk and took it out and gave it to Twomey. She telephones the purported lessee, Surrender Bhatty, but received no answer.

Twomey believed that Sunita was the office clerk or the office manager, since she knew where everything was, and she knew her way around behind the desk. All the documents Twomey received at the store were given to him by Sunita. Twomey was advised by other officers that Sunita and Rajesh were the owners and that they ran the business. Twomey thought he had enough probable cause to arrest Sunita. Twomey thought he had enough probable cause to arrest Rajesh. Twomey reasonably thought that Sunita was a partner with Rajesh in the business of Accessories by Peak.

In the basement the plant material was coated with 2-propanone acetone, which is one of the precursors for making a controlled substance. Sunita was arrested for having that acetone with the 2-propanane, along with the fact that it was on the plant material in the basement. Those chemicals adhere very well to the weeds. Twomey concluded that since there were 5,000 packets of the weed already packed and, based on his training and the circumstances under which it was found, it was a precursor for developing controlled substances, which he was later proved correct.

Twomey believed there was sufficient probable cause to arrest both Sunita and Rajesh based on their apparent ownership of Accessories by Peak and the discovery of the drug manufacturing operation in the basement. Sunita was charged with the three charges indicated above and was transported in handcuffs to the Third Precinct. After being fingerprinted and

photographed Sunita was brought to a detention cell and, later that evening, transported to Nassau County Police Headquarters in Mineola where she spent the night. The next morning, October 5, 2017 Sunita was brought to Nassau County District Court in Hempstead where she was arraigned and then released upon her own recognizance. On November 22, 2017 the Nassau County District Attorney's Office dismissed the charges against Sunita pursuant to New York Criminal Procedure Law § 170.30(1)(f) due to legal impediment, which is not a termination of charges in favor of the accused. *Thompson v. Clark*, 364 F.Supp. 3d 178 (E.D.N.Y. 2018), *aff'd* 794 Fed. Appx. 140 (2d Cir. 2020). Rajesh received a sentence of Adjournment in Contemplation of Dismissal ("ACOD").

**Assistant District Attorney Kristen Fexas.** ADA Fexas, Deputy Bureau Chief of the Nassau County District Attorney's Narcotics, Firearms & Gangs Bureau, was the supervisor in charge of evaluating the criminal charges against Sunita and Rajesh. After speaking with the officers (excepting Twomey, who could not attend the meeting), Fexas determined that the District Attorney's Office could not prove beyond a reasonable doubt that Sunita was involved in the drug-making operation in the basement, and thus recommended that all three charges be dismissed under Criminal Procedure Law § 170.30(1)(f) due to legal impediment. However, Fexas believed that the officers reasonably believed that Sunita had dominion and control over the basement, and thus had probable cause to arrest her. Fexas will testify that she recommended that Rajesh be offered an Adjournment in Contemplation of Dismissal, which he accepted.

## ARGUMENT

### POINT I

### SINCE PROBABLE CAUSE EXISTED TO ARREST PLAINTIFF, HER CLAIM OF FALSE ARREST SHOULD BE DISMISSED

Plaintiff's first claim is for false arrest in violation of the Fourth and Fourteenth Amendments. "Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate

8

the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir. 2003) (citing *Weyant v. Okst ,* 101 F.3d 845, 852 (2d Cir. 1996) (false arrest); *Conway v. Vill. of Mount Kisco,* 750 F.2d 205, 214 (2d Cir.1984) (malicious prosecution)).

The elements of a false arrest claim under New York law are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Weyant*, 101 F.3d at 853. "Furthermore, when an arrest is made without a warrant, the officer has acted outside the scope of the legal process and therefore a rebuttable presumption arises that such an arrest is unlawful. The defendant has the burden of raising and proving the affirmative defense of probable cause." *Rodriguez v. City of New York,* 149 Misc.2d 295, 563 N.Y.S.2d 1004, 1005 (N.Y.Sup.Ct.1990) (citing *Broughton v. State,* 37 N.Y.2d 451, 458, 373 N.Y.S.2d 87 (N.Y. 1975)). Probable cause is "a complete defense to a cause of action for false arrest." *Feinberg v. Saks & Co.,* 56 N.Y.2d 206, 210, 451 N.Y.S.2d 677 (N.Y.1982). "The same holds true for [a] false imprisonment claim[ ] because, under New York law, the claim is identical to a false arrest claim and the federal claim looks to the elements of the state claim." *Kilburn v. Vill. of Saranac Lake,* 413 Fed. Appx. 362, 363 (2d Cir. 2011) (citations omitted).

The Second Circuit has established that "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Jenkins v. City of New York,* 478 F.3d 76, 84 (2d Cir. 2007) (internal citation and quotation marks omitted). In general, probable cause is established where "the [arresting] officer has 'knowledge of, or reasonably trustworthy information as to, facts

and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *Finigan v. Marshall,* 574 F.3d 57, 62 (2d Cir. 2009) (quoting *Zellner v. Summerlin,* 494 F.3d 344, 368 (2d Cir. 2007)); Furthermore, "the validity of an arrest does not depend upon an ultimate finding of guilt or innocence." *Haussman v. Fergus,* 894 F.Supp. 142, 147 (S.D.N.Y.1995) (citing *Pierson v. Ray,* 386 U.S. 547, 555 (1967)). "Rather, the soundness of the arrest hinges on the existence of probable cause at the time the arrest was made." *Haussman,* 894 F.Supp. at 147. Moreover, a determination of probable cause is based upon the "totality of the circumstances, and where law enforcement authorities are cooperating in an investigation ..., the knowledge of one is presumed shared by all." *Calamia v. City of New York,* 879 F.2d 1025, 1032 (2d Cir. 1989) (internal citations and quotation marks omitted); *see also Bernard v. United States,* 25 F.3d 98, 102 (2d Cir. 1994) (citing *Illinois v. Gates,* 462 U.S. 213, 230 (1983)). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute." *Weyant,* 101 F.3d at 852 (citations omitted).

The collective knowledge doctrine provides that, for the purpose of determining whether an arresting officer had probable cause to arrest, "where law enforcement authorities are cooperating in an investigation, ... the knowledge of one is presumed shared by all." *Illinois v. Andreas,* 463 U.S. 765, 772 n. 5, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983). The Second Circuit has observed that "[this] rule exists because, in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates." *Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003), quoting *United States v. Valez,* 796 F.2d 24,

28 (2d Cir.1986). "Accordingly, the doctrine has traditionally been applied to *assist* officers in establishing probable cause—not to impute bad faith to one member of an enforcement team on the basis of another member's knowledge." *Savino*, 331 F.3d at 74 (emphasis in original).

In this case, the collective knowledge of Martone, Kenney, Liston and Twomey established that probable cause exited to arrest Sunita. Specifically, the defendants observed the contents of the basement in Accessories by Peak, *i.e.* the greenish plants in numerous Rubbermaid containers, which plants were coated by the chemical Acetone (2-Propanone)bongs, hookahs, water pipes and bowls for smoking marijuana, large containers of another white substance, liquid, big bags of prepackaged material as well as unfilled package materials, and large bags filled with prepackaged synthetic cannabinoids (K2) which Twomey estimated to be valued at $100,000.00.

Combined with Sunita's apparent joint ownership with Rajesh of the store, and Sunita's apparent authority and knowledge of the store evidence by her giving Twomey business cards and the lease with Surrender Bhatty, all combined to provide sufficient probable cause to arrest Sunita on charges of violation of New York Penal Law § 220.60, Criminal Possession of Precursors to Controlled Substances, an E Felony; with violation of New York Penal Law § 120.20, Reckless Endangerment in the Second Degree, an A Misdemeanor; and violation of New York Public Health Law § 3380.5(A), Illegal Use of Nitrous Oxide, an A Misdemeanor. Therefore, since probable cause existed to arrest Sunita, the jury should find for defendants on this claim.

## POINT II

**SINCE PROBABLE CAUSE EXISTED TO ARREST SUNITA,
HER CLAIM OF MALICIOUS PROSECUTION SHOULD BE DISMISSED**

Plaintiff's second claim for relief is for malicious prosecution. To succeed on a malicious prosecution claim under Section 1983, a plaintiff must show that (1) the defendant commenced or continued a criminal proceeding against him; (2) the proceeding was terminated in the plaintiff's

favor; (3) there was no probable cause for the proceeding; and (4) the proceeding was instituted with malice. *Droz v. McCadden,* 580 F.3d 106, 109 (2d Cir 2009); *Drummond v. Castro,* 522 F.Supp.2d 667, 677–78 (S.D.N.Y.2007). Malicious prosecution claims under § 1983 also require that there " 'be a seizure or other 'perversion of proper legal procedures' implicating the claimant's personal liberty and privacy interests under the Fourth Amendment.' " *Conte v. Cnty. of Nassau,* 2008 WL 905879, at *11 (E.D.N.Y. Mar. 31, 2008) (quoting *Washington v. Cnty. of Rockland,* 373 F.3d 310, 316 (2d Cir. 2004)). "Unreasonable seizure may be shown if a person is taken into custody, imprisoned, or physically detained." *Jean v. City of New York,* 2009 WL 3459469, at *9 (E.D.N.Y. Oct. 22, 2009). "The existence of probable cause is a complete defense to a claim of malicious prosecution in New York[.]" *Manganiello v. City of New York,* 612 F.3d 149, 161–62 (2d Cir. 2010).

As established in Point I, *supra*, probable cause existed to arrest Sunita. Since probable cause to arrest is a complete defense to a claim of malicious prosecution, her claim of malicious prosecution should be dismissed. *Manganiello*, 612 F.3d at 161-62.

Moreover, there is simply no evidence to even remotely support a finding of malice on the part of the defendants. Actual malice "does not require a plaintiff to prove that the defendant was motivated by spite or hatred," but instead that he initiated the criminal proceeding "due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Rounseville v. Zahl,* 13 F.3d 625, 630 (2d Cir.1994). Actual malice typically is shown by circumstantial evidence, including a lack of probable cause. *See Martin v. City of Albany,* 42 N.Y.2d 13, 396 N.Y.S.2d 612 (1977). As set forth above in connection with the probable cause analysis, there was ample basis for plaintiff's arrest. Under these circumstances, no reasonable jury would find the actual malice element is met because there is no evidence that the defendants were motivated by

"something other than a desire to see the ends of justice served." As such, the jury should find in favor of defendants on this claim.

## POINT III

### THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Even if the Court were to find a question exists as to probable cause, the individual defendants are nevertheless entitled to qualified immunity from suit for any alleged constitutional violations. "When analyzing qualified immunity in the context of a suit for damages based on an arrest allegedly without probable cause, a police officer is immune from such suit 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Pace v. Town of Southampton,* 678 F. Supp.2d 79, 86 (E.D.N.Y. 2010) (*quoting Posr v. Court Officer Shield No. 207,* 180 F.3d 409, 416 (2d Cir. 1999) (internal quotation omitted)). In this case, (a) it was certainly objectively reasonable for defendants to conclude that probable cause existed to arrest plaintiff Sunita Shah or (b) at the very least, officers of reasonable competence could disagree that probable cause existed. Moreover, even if the Court were to determine that defendants did not have probable cause to arrest plaintiff, they are "still entitled to qualified immunity from a suit for damages if [they] can establish that there was 'arguable probable cause' to arrest.

Arguable probable cause exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir. 2004) citation omitted). The "analytically distinct test for qualified immunity is more favorable to ... officers than the one for probable cause; 'arguable probable cause' will suffice to confer qualified immunity for the arrest." *Escalera,* 361 F.3d at 743. So-called "arguable probable cause" exists

"when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law." *Cerrone v. Brown,* 246 F.3d 194, 203 (2d Cir. 2001) (emphasis in original, citation omitted).

Here, based on the individual defendants' collective knowledge that (a) it was objectively reasonable for the officers to believe that probable cause existed to arrest plaintiff, or (b) officers of reasonable competence could disagree on whether the probable cause test was met, they are entitled to qualified immunity. Upon entering Accessories by Peak on October 4, 2017 the officers observed greenish plants in numerous Rubbermaid containers, which plants were coated by the chemical, Acetone (2-Propanone), bongs, hookahs, water pipes and bowls for smoking marijuana, large containers of another white substance, liquid, big bags of prepackaged material as well as unfilled package materials, and large bags filled with prepackaged synthetic cannabinoids (K2) which Twomey estimated to be valued at $100,000.00. It was therefore entirely reasonable for defendants to charge plaintiff with violation of New York Penal Law § 220.60, Criminal Possession of Precursors to Controlled Substances, an E Felony; with violation of New York Penal Law § 120.20, Reckless Endangerment in the Second Degree, an A Misdemeanor; and violation of New York Public Health Law § 3380.5(A), Illegal Use of Nitrous Oxide, an A Misdemeanor.

Thus, the jury should determine that it was objectively reasonable for the officers to arrest plaintiff based on the evidence listed above. At the very least, officers of reasonable competence could disagree that probable cause existed. The individual defendants are therefore protected by qualified immunity from civil suit for plaintiff's claims of false arrest and malicious prosecution. Therefore, all of plaintiff's claims, and the Amended Complaint, should be dismissed by the jury.

## POINT IV: EVIDENTIARY ISSUES

As set forth in the Joint Pretrial Order, plaintiff intends to introduce into evidence twelve (12) individual media reports of plaintiff's arrest, ten in print, and two in video. Defendants object to the introduction of all of these potential exhibits under Federal Rules of Evidence 403, which provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Defendants submit that for plaintiff to introduce more that five (5) such exhibits will constitute undue delay, wasting time, and needlessly presenting cumulative evidence. The court should therefore rule that plaintiff may introduce no more than five (5) such exhibits at trial.

Dated: Mineola, New York
June 9, 2022

**THOMAS A. ADAMS**
Nassau County Attorney
Attorney for Defendants

By: /s/ Ralph J. Reissman
    RALPH J. REISSMAN
    Deputy County Attorney
1 West Street
Mineola, New York 11501
(516) 571-3046