UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

SUNITA SHAH,

                           Plaintiff,

  -against-

DETECTIVE JOHN LISTON, individually,
POLICE OFFICER ANDREW MARTONE,
individually, POLICE OFFICER MICHAEL
KENNEY, individually, DETECTIVE DAVID
TWOMEY, individually, and THE COUNTY
OF NASSAU,

                          Defendants.
-----------------------------------------------------------X

**MEMORANDUM AND ORDER**

**18-CV-4625 (ST)**

**TISCIONE, United States Magistrate Judge**:

       Defendants move this Court for an order altering or amending the jury verdict rendered by the jury and filed on the docket on December 18, 2023. Defendants Nassau County Police Officers Andrew Martone and Michael Kenney filed their fully briefed Motion Pursuant to FRCP 59(e)[1] for an order altering or amending the jury verdict on November 13, 2024. ECF 131. On November 14, 2024, Plaintiff submitted her fully briefed Motion for Attorneys' Fees. ECF 132. For reasons discussed herein, Defendants' motion is DENIED and Plaintiff's Motion is GRANTED IN PART.

## BACKGROUND

       On August 16, 2018, Plaintiff Sunita Shah ("Plaintiff") commenced this action under 42 U.S.C. § 1983 claiming that Defendants Nassau County, Nassau County Detectives John Liston

---

[1] Defendants improperly brought forth their Motion under Rule 59(e). The proper vehicle for bringing forth Defendants' Motion is under Rule 50(b) as a renewed motion for a judgment as a matter of law, given that Defendants' prior Rule 50(a) motion for a judgment as a matter of law was denied by this Court during trial.

and David Twomey, and Nassau County Officers Andrew Martone and David Kenney violated her Fourth and Fifth Amendment rights by falsely arresting her on October 4, 2017. Between December 11 and 15, 2023, a jury trial on this case was conducted in this Court, with the jury returning a verdict finding Nassau Country and Detective Liston and Twomey not liable, but finding Officers Martone and Kenney liable for false arrest. The jury subsequently awarded Plaintiff $500,000 in compensatory damages.

Defendants in their current motion move this Court for an order altering or amending the jury verdict to dismiss Officers Martone and Kenney from this action, principally arguing that Defendant police officers are entitled to qualified immunity from liability. *See generally* Defs.' Mem. Supp.

Plaintiff in her current motion seeks an award of $289,940.00 in attorneys' fees and $24,667.34 in costs and disbursements. *See* Pl.'s Mot' for Att'ys' Fees at 1.

## STANDARD OF REVIEW

**I.     FRCP Rule 50(b): Renewed Judgment as a Matter of Law**

Rule 50(a) of the Federal Rules of Civil Procedure permits a party to move for judgment as a matter of law after a party has been fully heard and before a case is submitted to the jury. Fed. R. Civ. P. 50(a). A motion made pursuant to Rule 50(a) "must specify the judgment sought and the law and facts that entitle the movant to the judgment." *Id.* If the court denies a party's Rule 50(a) motion, the movant may file a renewed motion for judgment as a matter of law no later than 28 days after entry of judgment.6 Fed. R. Civ. P. 50(b). "In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." *Id.*

"In considering a motion for judgment as a matter of law, the district court 'must draw all reasonable inferences in favor of the nonmoving party.'" *Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007) (quoting *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150 (2000)). The court must not, however, make credibility determinations or weigh the evidence because " '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' " *Id.* (quoting *Reeves*, 530 U.S. at 150). Consequently, " 'although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.' " *Id.*; *see also Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970 (2d Cir. 1987) (a court "cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury") (internal quotation marks omitted).

The movant thus bears a heavy burden, because "a court may grant a motion for judgment as a matter of law 'only if it can conclude that, with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable juror would have been compelled to accept the view of the moving party.'" *Zellner*, 494 F.3d at 370-71 (quoting *Piesco v. Koch*, 12 F.3d 332, 343 (2d Cir. 1993)) (emphasis in original). In other words, the court may grant a Rule 50(b) motion for judgment as a matter of law only if the record contains "'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or ... such an overwhelming amount of evidence in favor of the movant that reasonable and fair-minded [jurors] could not arrive at a verdict against [it].'" *Concerned Area Residents for Env't v. Southview Farm*, 34 F.3d 114, 117 (2d Cir. 1994) (quoting *Song v. Ives Lab., Inc.*, 957 F.2d 1041, 1046 (2d Cir. 1992)).

"Because a motion pursuant to Rule 50(b) is in reality a renewal of a motion pursuant to Rule 50(a), the grounds on which a party may rely in a Rule 50(b) motion are limited to those grounds that were specifically raised in the prior [Rule 50(a) motion]." *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 490 F. Supp. 3d 593, 615–16 (E.D.N.Y. 2020) (citing *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53–54 (2d Cir. 1994) and *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998)) (internal citations and quotation marks omitted). Thus, it is well established that "the movant is not permitted to add new grounds after trial." *Galdieri–Ambrosini*, 136 F.3d at 286 (citing *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997)).

## II.     Attorneys' Fees

A court may award reasonable attorney fees to the "prevailing party" in a § 1983 action. 42 U.S.C. § 1988(b); *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (explaining that courts cannot depart from the so-called "American Rule" for fees absent some "express statutory authorization to the contrary"). "Determining whether an award of attorney's fees is appropriate requires a two-step inquiry." *Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996). "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Osterweil*, 92 F. Supp. 3d at 23 (quoting *Farrar*, 506 U.S. at 111-12, 113 S.Ct. 566). Section 1988 "has been interpreted to create a strong preference in favor of the prevailing party's right to fee shifting," and therefore a prevailing party " 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' " *Id.* (quoting *Wilder v. Bernstein*, 965 F.2d 1196, 1201-02 (2d Cir. 1992)).

"To determine a reasonable amount of attorneys' fees, courts use the lodestar method—the product of a reasonable hourly rate and the hours reasonably spent on the case." *United States ex*

*rel. Rubar v. Hayner Hoyt Corp.*, 306 F. Supp. 3d 478, 488 (N.D.N.Y. 2018) (Sharpe, J.) (applying lodestar calculation to False Claims Act award); *see also Johnson v. Mauro*, 2019 WL 5842765, at *1 (N.D.N.Y. Nov. 7, 2019) (Sannes, J.) (applying lodestar calculation to § 1988 fee request). Under the lodestar approach, the "reasonable hourly rate" is determined by reference to "what a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany* ("*Arbor Hill*"), 522 F.3d 182, 184 (2d Cir. 2008). As the Second Circuit has explained, "the reasonable, paying client" is one "who wishes to pay the least amount necessary to litigate the case effectively." *Id.*

## DISCUSSION

Although ostensibly brought as a Motion to Amend a Judgment under FRCP 59, Defendants, in actuality, are asking for Judgment as a Matter of Law, which is more properly brought under Rule 50(b).  Accordingly, this Court will conduct its analysis under the appropriate Rule 50(b) framework and treat Defendants' Motion as a renewed motion for judgment as a matter of law. As demonstrated in greater detail below, Defendants' Motion fails to meet its burden in moving the Court to grant Defendants judgment notwithstanding the December 18, 2023, jury verdict. Specifically, Defendants' Motion failed to demonstrate that Officers Martone and Kenney (collectively "Officers" or "Defendants") are entitled to qualified immunity as Officers did not have actual or arguable probable cause in falsely arresting Plaintiff Sunita Shah. Furthermore, also discussed in greater details below, the Court grants in part Plaintiff's Motion for Attorneys' Fees and Costs in the amount of $310,957.84

**I.   Officers are NOT Entitled to Qualified Immunity as Defendants failed to make a showing that Officers had Actual or Arguable Probable Cause in arresting Plaintiff**

In §1983 suits against police officer, it is 2nd Circuit procedure for the Court to present the issues of liability to the jury and to reserve the question of qualified immunity for the Court to decide after trial if the jury verdict was rendered in Plaintiff's favor. *Harewood v. Braithwaite*, 64 F. Supp. 3d 384, 395 (E.D.N.Y. 2014); *see also Stephenson v. Doe*, 332 F.3d 68, 80 (2d Cir.2003) ("The court should charge the jury on [plaintiff's § 1983 claim], but not on qualified immunity. If the jury returns a verdict ... against [plaintiff], the court should then decide the issue of qualified immunity.").

In order to be entitled to qualified immunity, an arresting officer must either demonstrate that probable cause existed in making the arrest, or if unable to do so, that there exists arguable probable cause in making the arrest. *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). Arguable probable cause exists "'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id. (quoting Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991)).

As elaborated in greater detail below, Defendants fail to showcase that the Officers had actual or arguable probable cause to arrest Plaintiff.

   A. *Officers Lacked Actual Probable Cause to Arrest Plaintiff*

Probable Cause exists "if officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested." *United States v. Cole*, 26 F. App'x 45, 46–47 (2d Cir. 2001) (internal citations omitted).

Here, at the conclusion of the December 11, 2023, Jury Trial, the jury rendered a verdict in favor of Plaintiff, explicitly asserting that the Officers lacked probable cause in arresting Plaintiff. Jury Verdict Sheet, Court Exhs. at 32, ECF 118. Given that the jury made a determination on actual probable cause, the court is dissuaded from relitigating the issue. Furthermore, when considering a Rule 50 motion, the Court must accord a high degree of deference to the jury's evaluation of witness credibility, as jury verdicts '"should be disturbed with great infrequency.'" *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 98 (2d Cir. 2014) (quoting *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir.2012)). Therefore, given the high degree of deference afforded to jury verdicts, coupled with Defendants' failure to demonstrate a clear error of law or manifest injustice, the Court rejects Defendants' assertion that probable cause to arrest Plaintiff existed, in turn precluding the application of qualified immunity on such grounds.

B.  *Officers Lacked Arguable Probable Cause to Arrest Plaintiff*

Defendants alternatively contend that Officers are entitled to qualified immunity as they exhibited arguable probable cause. Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007). To assist in a determination of arguable probable cause, Courts in this circuit typically utilize special interrogatories to determine the facts that the arresting officers faced or perceived, which in turn assists the court in making the legal determination of whether qualified immunity attaches to such facts. *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003).

In the instant matter, the Court is unconvinced by Defendants' argument that Plaintiff "mistakenly relied on the jury's answers to the Special Interrogatories" in determining what the

Officers reasonably believed. Reply at 4. Defendants employ a sort of circular logic in their claim that the answers to special interrogatories only serve to tell the Court what "the jurors believed" to be the facts rather than what "Martone and Kenney objectively reasonably believed" to be the facts when arresting plaintiff. *Id.* at 4. Such an argument is without merit as the whole purpose of special interrogatories in this context was to serve as the basis of what could objectively be considered a reasonable rendition of the facts leading up to the arrest.[2] Defendants paradoxically argue that the Officers subjective view of the facts should govern when such an analysis, as admitted by Defendants, requires objectivity as to what an officer in a similar position would reasonably believe, not what they subjectively believed at the time. Therefore, the special interrogatories govern as the factual basis in establishing arguable probable cause or a lack there of.

Turning to the special interrogatories, the Court finds that most fall in Plaintiff's favor in defeating Defendants' contention that arguable probable cause exists:

> Question 6. Do you find Sunita Shah provided the Surrender Bhatty lease agreement to Officer Martone? No.
>
> Question 7. Do you find Sunita Shah provided the Surrender Bhatty lease agreement to Detective Twomey? No.
>
> Question 8. Do you find that Sunita Shah provided a business card to Detective Twomey for Accessories by Peak? Yes
>
> Question 9. Do you find Sunita Shah had a key to 120 Hillside Avenue? No.
>
> Question 10. Do you find Sunita Shah accompanied Rajesh Shah to open the door to 120 Hillside Avenue for the East Williston Fire Department? No.
>
> Question 11. Do you find Sunita Shah told the Defendants that she was the owner of the business? No.

---

[2] Following a verdict in Plaintiff's favor, Courts in this jurisdiction present the jury with a "series of factual questions, known as special interrogatories, to aid the Court in its determination of the qualified immunity issue." *See e.g.*, *Zellner*, 494 F.3d at 368. When material facts pertaining to immunity are in dispute, the appropriate procedure is to allow the jury to resolve any disputed facts that are material to the qualified immunity issue, so that the court may make the "ultimate determination of whether the officer's conduct was objectively reasonable...." *Id.*

> Question 12. Do you find Rajesh Shah told the Defendants that Sunita Shah was the owner of the business? No.
>
> Question 13. Do you find Rajesh Shah told the Defendants that Sunita Shah was not the owner of the business? Yes

Jury Verdict Sheet, Court Exhs. at 33-34. Almost all of these interrogatories favor Plaintiff, particularly the jury's responses to Questions Nine and Thirteen, as they contradict Defendants' primary assertion that the Fire Department informed Officers that Plaintiff was a keyholder of the business. Defs.' Mem. Supp. at 19-20, 45-46. Even if the Court were more convinced by the validity of this factual assertion by Defendants, the Court "cannot, given principles of collateral estoppel, make its own findings that are inconsistent with the findings of the jury." *Lore v. City of Syracuse*, 670 F.3d 127, 167 (2d Cir. 2012) (summarizing a legal conclusion reached in *LeBlanc–Sternberg v. Fletcher*, 67 F.3d 412, 432 (2d Cir.1995)).

The one special interrogatory that favor Defendants was the jury's determination that Plaintiff provided a business to Detective Twomey. However, such a factual determination is woefully insufficient to establish probable cause that Plaintiff maintained constructive possession over the narcotics found in the basement. To establish constructive possession of contraband, a party must "exercise dominion and control over the contraband in question." *United States v. Willis*, 14 F.4th 170, 181 (2d Cir. 2021). Furthermore, "mere presence in an area where" the narcotics were found "is not sufficient to establish that [a party] exercised such dominion and control as to establish constructive possession." *People v. Knightner*, 11 A.D.3d 1002, 1004, 782 N.Y.S.2d 333, 335 (2004) (internal citations omitted).

Here, the facts are clear that Plaintiff did not have a key to the business, she did not accompany Rajesh Shah in opening the door to the business, and Officers were notified by Rajesh Shah that Plaintiff was not an owner of the business. Jury Verdict Sheet, Court Exhs. at 33-34.

These facts strongly favor the conclusion that Plaintiff failed to exert dominion and control over the narcotics or over the area where the narcotics were found. The mere fact that Plaintiff handed a business card to Detective Twomey, one that did not contain her name, but merely the name of the business that her husband owned, does not override the strong assumption that Plaintiff did not exercise control over the business. Merely handing a business card cannot be inferred to mean that that person is an owner or asserts some degree of control over the business. Therefore, the factual determinations made by the jury strongly imply that the Officers lacked arguable probable cause in arresting Plaintiff for constructive possession of the narcotics.

Furthermore, Defendants' application of the court's ruling in *Triolo v. Nassau County* is misguided. 24 F.4th 98 (2d Cir. 2022); *see* Defs.' Mem. Supp. at 5-6. In *Triolo*, the jury found the arresting detective liable for false arrest and held that he lacked probable cause in arresting Plaintiff. On the detective's post-trial motion, the District Court held upheld the jury's decision that the arresting detective lacked probable cause, but held that the detective was protected by qualified immunity because he demonstrated arguable probable cause in arresting Plaintiff. In that case, the arresting detective arrested the plaintiff based on sworn statements from two of the plaintiff's family members that the plaintiff had committed a crime. During trial, the jury determined that the arresting officer lacked probable cause to arrest the plaintiff because the arresting detective failed to "question the veracity of [the family members] in a manner sufficient to negate probable cause." *Triolo v. Nassau Cnty.*, NY, No. CV 16-2085 (AKT), 2019 WL 5742623, at *7 (E.D.N.Y. Nov. 4, 2019), aff'd in part, rev'd in part and remanded sub nom. *Triolo*, 24 F.4th. The court concluded, based on consideration of the sworn statements of the plaintiff's family members along with other evidence available to the arresting detective at the time of the arrest, that the arresting detective had arguable probable cause in arresting the plaintiff. *Id.* at *6.

This matter differs from the facts in *Triolo* as the only evidence that the Officers had in favor of possessing arguable probable cause are the purported assertion that the Fire Department informed Officers that Plaintiff was a keyholder of the business and that Plaintiff handed a business card to Detective Twomey; both of which pale in comparison to the evidence the arresting detective in *Triolo* operated under in conducting his arrest.

Therefore, Defendants fail to demonstrate that Officers Martone and Kenney had arguable probable cause in arresting Plaintiff and are thus precluded from the application of qualified immunity.

## II.     Attorneys' Fees

A court may award reasonable attorney fees to the "prevailing party" in a § 1983 action. 42 U.S.C. § 1988(b); *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (explaining that courts cannot depart from the so-called "American Rule" for fees absent some "express statutory authorization to the contrary"). "Determining whether an award of attorney's fees is appropriate requires a two-step inquiry." *Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996). "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Osterweil*, 92 F. Supp. 3d at 23 (quoting *Farrar*, 506 U.S. at 111-12, 113 S.Ct. 566). Section 1988 "has been interpreted to create a strong preference in favor of the prevailing party's right to fee shifting," and therefore a prevailing party " 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' " *Id.* (quoting *Wilder v. Bernstein*, 965 F.2d 1196, 1201-02 (2d Cir. 1992)).

Here, there is no ambiguity that Plaintiff is the prevailing party in this action, as is acknowledged by Defendants.[3] Therefore, this Court moves onto the second portion of the two-part inquiry laid out in *Pino*: whether the requested fee is reasonable. 101 F.3d at 237. "To determine a reasonable amount of attorneys' fees, courts use the lodestar method—the product of a reasonable hourly rate and the hours reasonably spent on the case." *United States ex rel. Rubar v. Hayner Hoyt Corp.*, 306 F. Supp. 3d 478, 488 (N.D.N.Y. 2018) (Sharpe, J.) (applying lodestar calculation to False Claims Act award); *see also Johnson v. Mauro*, 2019 WL 5842765, at *1 (N.D.N.Y. Nov. 7, 2019) (Sannes, J.) (applying lodestar calculation to § 1988 fee request). Under the lodestar approach, the "reasonable hourly rate" is determined by reference to "what a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany* ("*Arbor Hill*"), 522 F.3d 182, 184 (2d Cir. 2008). As the Second Circuit has explained, "the reasonable, paying client" is one "who wishes to pay the least amount necessary to litigate the case effectively." *Id.*

In the instant matter, Defendants do not contest Plaintiff's request for attorneys' fees of $289,940. Defendants only move this Court to cut Plaintiff's request for costs and disbursements from $24,667.34 to $21,017.84, arguing that Plaintiff's request of $7,275.00 for jury consultant services is excessive. Defs.' Opp. to Mot. for Att'ys' Fees at 2. In calculating attorneys' fees, this Court will first begin by determining the reasonableness of the $289,940 attorney fee award by assessing the prevailing reasonable hourly rates and reasonable hours expended.

*A. Hourly Rate*

To determine a reasonable hourly rate, courts consider the market rates prevailing in the district for similar services by lawyers of reasonably comparable skill, experience, and reputation.

---

[3] "[T]he jury…found in favor of plaintiff against defendant Police Officers Andrew Martone and Michael Kenny." Defs.' Opp. to Mot. for Att'ys' Fees at 1.

*Ying*, 2025 WL 968586, at *15. In the Eastern District, reasonable rates currently range from "$450-$650 for partners, $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals." *Rubin*, 763 F. Supp. 3d at 244.

Here, Attorney Steven Harfenist's hourly rate of $600, Attorney Neil Torczyner's hourly rate of $400, Paralegal Kathryn Passero's hourly rate of $100, and Administrative Assistant Laurie Moller's hourly rate of $75 are all reasonable and fall within the current prevailing market rates in the district. Pl.'s Mot. for Att'ys' Fees at 1. Moreover, Plaintiff's Counsel has submitted sufficient biographical information regarding each individual's background, education, and experience demonstrating these rates are reasonable. *Id.* at 2-7. Thus, the hourly rates for Plaintiff's Counsel and supporting staff are reasonable.

### B. *Reasonable Hours Expended*

Next, this Court must determine whether the hours billed were reasonable. *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). When the lodestar is used as a cross-check, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Plaintiff submits that counsel and their support staff have spent a combined 720.3 hours in prosecuting this case. Pl.'s Mot. for Att'ys' Fees at 14. The Court finds this amount of hours to be reasonable as this was a §1983 case that presented the issue of qualified immunity which required special interrogatories to be submitted to the jury as a result of significant factual dispute. Furthermore, this case went through two separate trials that were heavily contested and involved multiple witnesses with varying versions of events. Thus, the Court finds Plaintiff's Counsel's hours expended to be reasonable.

*C. Costs*

Plaintiff's Counsel requests costs and expenses in the amount of $24,667.34, with $7,275.00 of that figure deriving from jury consultant services. *See* Pl's Mot. for Att'ys' Fees at 15. Courts allow counsel to recover reasonable out of pocket expenses. *Paulino v. S & P Mini Market Corp.*, No. 22-CV-8724 (GWG), 2025 WL 1860266, at *8 (S.D.N.Y. July 7, 2025); *Viafara v. MCIZ Corp.*, No. 12-CV-7452 (RLE), 2014 WL 17777438, at *15 (S.D.N.Y. Ap. 30, 2014). The Court agrees with Defendants in that all of Plaintiff Counsel's costs are reasonable with the exception of the jury consultant expert expense. Defs.' Opp. to Mot. for Att'ys' Fees at 2. Although "courts have awarded costs for jury focus groups and other trial support services, such 'premium services' are not generally awarded as a matter of course." *Rosario v. City of New York*, No. 118CV04023LGSSDA, 2023 WL 2908655, at *14 (S.D.N.Y. Jan. 27, 2023), report and recommendation adopted as modified, No. 18 CIV. 4023 (LGS), 2023 WL 2523624 (S.D.N.Y. Mar. 15, 2023). Therefore, the Court cuts Plaintiff Counsel's Jury Consultant Expert Expense Award from $7,275 to $3,625.50 and grants Plaintiff's Counsel a total of $21,017.84 in costs.

Accordingly, the Court awards Plaintiff's Counsel $289,940.00 in attorneys' fees and $21,017.84 in costs for a total award of $310,957.84.

## CONCLUSION

For the reasons discussed above, Defendants' Motion pursuant to FRCP 59(e) for an order altering or amending the jury verdict is DENIED and Plaintiff's Motion for attorneys' fees and costs is GRANTED IN PART.

**SO ORDERED.**

/s/ Steven L. Tiscione
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
September 29, 2025